IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JULIE FROST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-03188-SRB |
| ) | |
| IPPOLITO INTERNATIONAL, L.P., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendant Performance Food Group, Inc.'s ("PFG") Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. #34.) For the reasons set forth below, the motion is DENIED.

### I. FACTUAL BACKGROUND

Because this matter comes before the Court on a motion to dismiss, the following allegations in Plaintiff Julie Frost's ("Frost") Second Amended Complaint (Doc. #4) are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendant Ippolito International, L.P. ("Ippolito") owns and operates a facility around Yuma, Arizona, where it manufactures, holds, and cools leafy green products, including romaine lettuce. Ippolito distributes these products to customers throughout the country. In February and March 2018, Ippolito distributed romaine lettuce to Defendant 68 Produce, LLC ("68 Produce").

68 Produce then distributed some of that lettuce to PFG, which PFG then distributed to a Logan's Roadhouse restaurant ("Logan's") in Springfield, Missouri.[1]

On March 15, 2018, Frost purchased and consumed a romaine lettuce salad at Logan's. Logan's prepared the salad using romaine lettuce originally sourced from Ippolito, and which was later sold and/or distributed by 68 Produce and/or PFG. Frost alleges that the lettuce was contaminated with E. coli at the time it left Ippolito's facility. Frost further alleges that consuming the lettuce caused her to become infected with E. coli, which caused her illness and damages.

On June 23, 2020, Frost filed this case against Defendants. The Second Amended Complaint asserts the following claims against Ippolito, 68 Produce, and PFG: Count I—Strict Liability; Count II—Breach of Warranty; Count III—Negligence; and Count IV—Negligence Per Se. PFG now moves to dismiss each claim asserted against it under Federal Rule of Civil Procedure 12(b)(6). PFG argues that Missouri's "innocent seller" statute bars the strict liability and breach of warranty claims.[2] PFG argues that the negligence and negligence per se claims are not adequately pled and fail to state a claim upon which relief may be granted. Frost opposes the motion, and the parties' arguments are addressed below.

**II. LEGAL STANDARD**

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true,

---

[1] The original complaint asserted claims against Logan's, but Logan's is not a named defendant in the Second Amended Complaint.

[2] The Court has diversity jurisdiction over this case, and the parties appear to agree that Frost's claims arise under Missouri law.

2

to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotations omitted).

### III. DISCUSSION

#### A. Strict Liability Claim

Count I asserts a strict liability claim against PFG. A strict liability claim has the following elements: "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 712 (Mo. App. E.D. 2020).

PFG does not argue that these elements are inadequately pled, but instead argues that the strict liability claim should be dismissed under Missouri's "innocent seller" statute. Mo. Rev. Stat. § 537.762. This statute "permits dismissal of product liability claims against the seller of a product provided that the defendant's liability is '[1] based solely on his status as a seller' and '[2] another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had.'" *Hornbeck v. Tractor Supply Co.*, No. 4:18-cv-00523-NKL, 2019 WL 1529384, at * 1 (W.D. Mo. Mar. 12, 2019) (quoting Mo. Rev. Stat. § 537.762.1-2.)

3

However, a seller may not avail itself of this statute for claims based on its "own negligence or other conduct." *Id.*

PFG argues that the strict liability claim is based solely on its status as a seller of the lettuce. PFG further argues that Ippolito manufactured the lettuce, that Ippolito has appeared in this case and is properly before the Court, and that Ippolito is a "large, viable company" from which Frost may obtain a total recovery. (Doc. #35, p. 4.)[3] As such, PFG argues that the innocent seller statute is applicable and requires dismissal of Frost's strict liability claim.

In response, Frost argues it would be premature to dismiss this claim under the innocent seller statute. Frost contends in part that "because discovery has only just begun, the parties have not yet identified the actual grower of the contaminated romaine lettuce, which would be the only entity who can be said at this early juncture to be, definitively, a manufacturer." (Doc. #40, p. 5.)

Upon review of the parties' arguments, and at this stage of litigation, the Court declines to dismiss Count I under the innocent seller statute. "Where it is unclear who the manufacturer of the product-at-issue was, or where it is otherwise unclear that a total recovery can be had against the parties remaining in suit, it is error to apply the innocent seller statute." *Davis v. Dunham's Athleisure Corp.*, 362 F. Supp. 3d 651, 659 (E.D. Mo. 2019). PFG maintains that Ippolito manufactured the lettuce, and that Ippolito would be able to fully satisfy a judgment. But these arguments raise factual disputes, not pleading deficiencies.

---

[3] In support of these assertions, PFG submitted an affidavit which states that it did not grow or harvest the lettuce. (Doc. #35-1, p. 2.) Frost argues this affidavit cannot be considered on a motion to dismiss, and/or the pending motion must be converted to a motion for summary judgment. PFG's reply brief argues that the affidavit may be considered in resolving the motion to dismiss. (Doc. #49, pp. 2-3.) At this early stage of the proceedings, the Court finds that discovery is needed to resolve the applicability of the innocent seller statute. As such, the Court declines to accept the factual assertions in the affidavit and declines to convert the pending motion into a motion for summary judgment.

4

PFG further argues that Frost alleges that Ippolito is a "manufacturer of the subject lettuce." (Doc. #49, p. 3.) However, Frost also alleges that PFG "manufactured, supplied, packaged, distributed and/or sold" the lettuce. (Doc. #4, ¶ 1.3.) The Court finds that the Second Amended Complaint adequately alleges that Ippolito and/or PFG manufactured the lettuce, and contains sufficient allegations to avoid dismissal under the innocent seller statute.[4]  PFG may reassert this defense following the completion of discovery.

**B. Breach of Warranty Claim**

Count II asserts a claim for breach of express and implied warranty.  "Under Missouri law, the elements of a breach-of-express-warranty claim are:  (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact regarding the kind or quality of those goods; (3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity harmed the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion." *Guilford v. Boston Scientific Corp.*, No. 4:19-CV-00955-DGK, 2020 WL 1668279, at * 3 (W.D. Mo. Apr. 3, 2020).  To state a claim for breach of an implied warranty, a plaintiff must allege: "(1) a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the buyer, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Id.*

As with the strict liability claim, PFG does not argue that Frost failed to adequately plead these elements.  Instead, PFG argues that the breach of warranty claim should be dismissed under the innocent seller statute.  For the reasons stated above, the Court finds that dismissal under the innocent seller statute would be premature.  PFG may reassert its arguments following

---

[4] The Court further rejects PFG's argument that Frost's allegations impermissibly "attribut[e] conduct to all 'defendants,' with no factual support." (Doc. #35, p. 7.)

the completion of discovery. Accordingly, PFG's motion to dismiss the breach of warranty claim is denied.

### C. Negligence Claim

Count III asserts a claim for negligence. "[I]n any action for negligence, the plaintiff must establish [1] that the defendant had a duty to protect the plaintiff from injury, [2] the defendant failed to perform that duty, and [3] the defendant's failure proximately caused injury to the plaintiff." *L.A.C. v. Ward Parkway Shopping Ctr., Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citations and quotations omitted).

PFG argues that the negligence claim is inadequately pled and fails to state a claim. According to PFG, Frost specifically alleges that the lettuce was contaminated when it left Ippolito's facility. PFG contends that Frost does not allege that it "participated in the cultivation, harvesting, testing or packaging of the lettuce," and "wholly fails to set out how or why PFG's distribution of the lettuce was negligent." (Doc. #35, p. 7.) In response, Frost argues that she has adequately pled each element of a negligence claim.

Upon review, the Court finds that Frost has stated a claim for negligence. Frost alleges that PFG (and the other Defendants) owed her "a duty to use reasonable care in the manufacture, supply, packaging, distribution and sale of their food product, which duty would have prevented or eliminated the risk that the Defendants' food products would become contaminated with E. coli[.]" (Doc. #4, ¶ 6.14.) Frost plausibly alleges that this duty arises, in part, from prior outbreaks of E. coli from lettuce and other leafy greens. (Doc. #4, ¶ 3.1.) Frost also alleges that PFG breached this duty by manufacturing, selling, or distributing lettuce that was not safe for human consumption, and that she suffered damages as a result. These allegations adequately state a claim for negligence.

6

PFG's reply brief argues that it "would have been temporally impossible for PFG to have known about the subject outbreak when it delivered the lettuce." (Doc. #49, p. 5.) However, Frost's allegations, taken as a whole, are sufficient to survive a motion to dismiss. Discovery will reveal when or if PFG knew or should have known of possible contamination. Therefore, PFG's motion to dismiss Count III is denied.

**D. Negligence Per Se Claim**

In Count IV, Frost asserts a negligence per se claim. Frost alleges that "Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, et seq.)" ("FDCA"). (Doc. #4, ¶ 6.20.) Frost further alleges that Defendants breached that duty and that she suffered damages as a result.

A negligence per se claim has four elements: "(1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was of the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Dibrill v. Normandy Assoc., Inc.*, 383 S.W.3d 77, 84-85 (Mo. App. E.D. 2012). The statute at issue "must specifically prohibit some action such that it rises above the level of a general hypothesis of negligence." *Braxton v. DKMZ Truck., Inc.*, No. 4:13–cv–1335–JCH, 2013 WL 6592771, at * 2 (E.D. Mo. Dec. 16, 2013) (citations and quotations omitted).

PFG argues that Frost has not adequately pled a negligence per se claim. PFG contends that Frost "has not identified any discrete rule, regulation or statute whatsoever," or the specific conduct prohibited by such law. PFG also argues that Frost failed to allege that it violated any law or regulation. In response, Frost argues that she expressly alleged a violation of the FDCA.

7

Frost contends that Chapter 9 of the FDCA "prohibits the delivery of any adulterated food into interstate commerce and grants the statutory authority by which food safety standards are set," and that courts have held the FDCA was enacted to protect consumers. (Doc. #40, p. 8) (citing cases).

Upon review, the Court finds that Frost has adequately stated a negligence per se claim. The Second Amended Complaint alleges that PFG had a duty to comply with the FDCA, that the FDCA is intended to ensure the purity of food products, that PFG did not comply with the FCDA, and that Frost suffered damages as a result. Although the negligence per se allegations are not detailed, they are sufficient to survive a motion to dismiss.[5] Consequently, PFG's motion to dismiss Count IV is denied.

## IV. CONCLUSION

Accordingly, Defendant Performance Food Group, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. #34) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: February 5, 2021

---

[5] PFG's reply brief argues that the FDCA cannot form the basis of a negligence per se claim. To the extent Frost has or intends to exclusively rely on the FDCA, PFG may reassert this argument following discovery.